FILED
2020 Feb-14 AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

HAROLD WALKER, JR., )
)
Plaintiff, )
)
v. ) Case No.: 5:18-cv-01618-LCB-SGC
)
OFFICER ALEXANDER, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 9). The plaintiff names as the sole defendant Correctional Officer Grady Alexander. (*Id.* at 2). The plaintiff requests that criminal charges be brought against the defendant and also seeks punitive damages. (*Id.* at 5). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Procedural History

On January 10, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to the named defendant and directing the defendant to file a special report addressing the plaintiff's factual allegations. (Doc. 10). The undersigned advised the defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil*

*Procedure*. (*Id.*). The order advised the plaintiff that, after he received a copy of the special report, he would have twenty-one days to file his initial disclosures pursuant to Rule 26(a)(1), *Federal Rules of Civil Procedure*. The plaintiff submitted initial disclosures on January 25, 2019, supplemented by affidavits and/or other evidence. (Doc. 11).

On March 12, 2019, the defendant filed a special report, supplemented by affidavits and/or other evidence. (Doc. 18). On March 14, 2019, the undersigned notified the parties the court would construe the special report as a motion for summary judgment and notified the plaintiff he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 20). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with FED. R. CIV. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). That deadline has expired, and the court has received no additional response from the plaintiff.

This matter is now before the court on the defendant's motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendant's special report as a motion for summary judgment, FED. R. CIV. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the

moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

**III. Summary Judgment Facts**

The plaintiff was incarcerated at the North Alabama Community Based Facility/Community Work Center in August 2018. (Doc. 9 at 4; Doc. 18-1 at 1). On August 24, 2018, Correctional Sergeant Howard directed the defendant to search the plaintiff's property thoroughly for contraband and pack the property for transfer with the plaintiff to Limestone Correctional Facility. (Doc. 18-1 at 1). Sergeant Howard advised the defendant not to allow the plaintiff to distract him during the search. (*Id.*).

Correctional Officers Scott Raper, Justin Horton, and Jonathan Nichols assisted the defendant in searching and packing the plaintiff's property. (*Id.* at 2; Doc. 18-4 at 1; Doc. 18-5 at 1). More specifically, the defendant and Officer Raper searched and packed the plaintiff's property, while Officers Horton and Nichols stood alongside the plaintiff and watched. (Doc. 18-1 at 2). As the defendant was searching the plaintiff's documents, the plaintiff told the defendant not to lose his paperwork. (*Id.*). The defendant assured the plaintiff he would keep the paperwork together, told the plaintiff he had to search the plaintiff's property thoroughly, instructed the plaintiff to be quiet, and stated the officers would complete the search and packing process as soon as possible. (*Id.*).

Then as the defendant was searching the plaintiff's family photographs, the plaintiff told the defendant not to bend the photographs. (*Id.*). The defendant reassured the plaintiff and told him to be quiet. (*Id.*). At this point, the defendant suspected the plaintiff was attempting to distract him. (*Id.*).

As the defendant placed the plaintiff's documents and photographs in a laundry bag, the plaintiff pointed to the bag – a gesticulation which alerted the defendant that the

plaintiff was not handcuffed – and loudly stated the defendant was bending a hand-drawn picture that was already in the bag. (*Id.*). The defendant told the plaintiff the picture was not bent, and the plaintiff responded in what the defendant characterizes as a loud and condescending voice, "Well, it won't do me any good if it gets bent, will it!". (*Id.*). The following exchange ensued:

> **The defendant:** "[S]hut [your] mouth[,] and let me do my job!"
>
> **The plaintiff:** "You don't tell a grown man to shut his mouth! F**k you[,] b**ch!"
>
> **The defendant:** "You are the b**ch[,] and you certainly were not worried about other people's property when you were committing your crimes!"
>
> **The plaintiff:** "You don't know me[,] b**ch! I am from Huntsville[,] and I'll kill you[.] I'll see you when I EOS!"

(*Id.*).

The defendant claims that at this point he approached the plaintiff to assist Officers Horton and Nichols in restraining him. (*Id.* at 3). The plaintiff "postured up" in a threatening manner, and his spittle blew into the defendant's face as he yelled, "You ain't gonna do nothing[,] b**ch!". (*Id.*). According to the defendant, he slapped the right side of the plaintiff's face with the open palm of his left hand because of the plaintiff's threatening posture. (*Id.*). Affidavits submitted by Officers Raper and Horton corroborate that the defendant slapped the plaintiff in the face. (Doc. 18-4 at 1; Doc. 18-5 at 1). Moreover, the Incident Report states the defendant struck the plaintiff in the face with the open palm of his left hand. (Doc. 18-6 at 1). However, the plaintiff claims the defendant punched, as opposed to slapped, him in the face. (Doc. 9 at 5). He has submitted affidavits

of seven inmates who testify they witnessed the defendant either punch or hit him in the face. (Doc. 11 at 3-9).

Although the parties and their witnesses disagree about the manner in which the defendant struck the plaintiff, they agree the plaintiff was in handcuffs at the time the physical contact occurred. (Doc. 9 at 5; Doc. 11 at 3-9; Doc. 18-1 at 3; Doc. 18-4 at 1; Doc. 18-5 at 1; Doc. 18-6 at 1). The affidavits of Officers Raper and Horton, as well as the Incident Report, indicate Officers Horton and/or Nichols placed the plaintiff in handcuffs during the verbal exchange between the plaintiff and the defendant, before the defendant struck the plaintiff. (Doc. 18-4 at 1; Doc. 18-5 at 1; Doc. 18-6 at 1). The defendant claims he did not know the plaintiff had been handcuffed until it was brought to his attention after he slapped the plaintiff. (Doc. 18-1 at 3).

Following the incident, Officers Horton and Nichols escorted the plaintiff to the health care unit. (Doc. 18-4 at 1; Doc. 18-5 at 1; Doc. 18-6 at 1). Nurse Sandra Ellis completed a body chart, noting the plaintiff complained of "touch pain" to the right side of his face, but that no bruising or open areas were observed. (Doc. 18-3 at 1).[1]

The plaintiff claims that as a result of the incident he suffered a sore jaw, blurred vision, and migraines. (Doc. 9 at 5). He asserts an excessive force claim against the defendant in his official and individual capacities and, as stated, requests that criminal charges be brought against the defendant and also seeks punitive damages. (*Id.* at 2-3, 5).

[1] The plaintiff also told Nurse Ellis the defendant hit him in the face with his fist. (Doc. 18-3 at 1).

## IV. Analysis

### A. Request for Criminal Charges

A private citizen has no judicially cognizable interest in the prosecution of another person, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and the decision whether to prosecute a crime "is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced," *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). Accordingly, the plaintiff's request seeking injunctive relief in the form of criminal charges is due to be dismissed for lack of jurisdiction.

### B. Official Capacity Claim

The Eleventh Amendment bars suits for money damages against a state by its citizens, unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it. *Carr v. City of Florence, Alabama*, 916 F. 2d 1521, 1524 (11th Cir. 1990). The State of Alabama has not waived its Eleventh Amendment immunity, nor has Congress abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983. *Id.* at 1525. Eleventh Amendment immunity extends to state officials sued in their official capacities, provided the state is the real, substantial party in interest. *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). In this context, correctional officers are considered state officials. *Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1271 (M.D. Ala. 2011). Because the defendant is a correctional officer employed by the Alabama Department of Corrections, an agency of the State of Alabama, Eleventh Amendment immunity bars the excessive force claim asserted against him in his official capacity. Accordingly, the motion

for summary judgment is due to be granted to the extent the excessive force claim asserted against the defendant in his official capacity is due to be dismissed with prejudice.

**C. Individual Capacity Claim**

An excessive force claim implicates the Eight Amendment's Cruel and Unusual Punishments Clause. The clause is violated when a prisoner is subjected to an " 'unnecessary and wanton infliction of pain,'" which in the context of an excessive force claim turns on " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson v. McMillian*, 503 U.S. 1, 5-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986)). Factors that may indicate for which of these purposes force was applied include (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id.* at 7 (citing *Whitley*, 475 U.S. at 321). "The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich v. Thornton*, 280 F.3d 1295, 1304 (11th Cir. 2002). However, not every malevolent touch gives rise to an Eighth Amendment excessive force claim. *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort repugnant to the conscience of mankind." *Id.* (internal quotation marks omitted).

**1. Qualified Immunity**

The defendant asserts the affirmative defense of qualified immunity in response to

the excessive force claim brought against him in his individual capacity. (Doc. 18 at 3). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Adujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted). "In [the] [Eleventh] Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301. Where a plaintiff asserts an Eighth Amendment excessive force claim, "[t]he only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment. If he has done so, that is the end of the inquiry." *Id.* Accordingly, the motion for summary judgment is due to be denied as to the defendant's qualified immunity affirmative defense, and the remainder of this report addresses whether there is a genuine issue of material fact as to the plaintiff's Eighth Amendment excessive force claim.

**2. Factual Sufficiency to Survive Summary Judgment**

Even if the defendant did not realize the plaintiff was in handcuffs at the time he struck him, a reasonable jury could conclude the defendant's actions were not for the purpose of restoring order but, rather, for the purpose of gratuitously inflicting pain. This conclusion would be supported by the presence of Officers Horton and Nichols alongside the plaintiff. The proximity of these officers to the defendant could be viewed as obviating

the need for the defendant to approach and strike the defendant. *See Hudson*, 503 U.S. at 7 (identifying need for application of force as factor relevant to analysis of excessive force claim). This conclusion also would be supported by the profanity the defendant directed toward the plaintiff immediately preceding the use of force. The defendant's choice of words suggests he was angry with the plaintiff, and to the extent the defendant struck the plaintiff out of anger, his use of force was gratuitous. *See id.* Finally, even assuming the defendant was justified in using some amount of force to restore the plaintiff to order, it would be reasonable to conclude the amount employed – whether a slap or a punch – exceeded the amount necessary under the circumstances. *See id.* (identifying relationship between need for application of force and amount of force used as factor relevant to analysis of excessive force claim).

Although the defendant takes the position his use of force was *de minimis*, this is a matter of factual dispute. To support his characterization, the defendant notes the body chart completed by Nurse Ellis indicated no bruises or open areas were observed. (Doc. 8 at 5). Nonetheless, the plaintiff alleges that as a result of the incident he suffered a sore jaw, blurred vision, and migraines (Doc. 9 at 5), and to the extent true, these injuries are indicative of the use of more-than-*de minimis* force. Moreover, these alleged injuries themselves are more than *de minimis*. *See Payne v. Dickerson*, 334 F. App'x 629, 631 (5th Cir. 2009) (holding in context of Fourth Amendment excessive force claim plaintiff's allegation he suffered chronic migraine headaches indicated more than de minimis injury); *see also Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) (holding that while a prisoner's injuries must be more than *de minimis* to support a 1983 claim, they "need not

be significant"), *vacated in part on other grounds*, 216 F.3d 970 (11th Cir. 2000); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (emphasizing "[t]he 'core judicial inquiry,' we held [in *Hudson*], was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'") (quoting *Hudson*, 929 F.2d at 7).

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment (Doc. 18) be **DENIED** and this action be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection,

however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 14th day of February, 2020.

Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE